## HAT CORPORATION OF AMERICA v. D. L. DAVIS CORPORATION.

### No. 2263.

District Court, D. Connecticut.
June 23, 1933.

618

Parmelee & Thompson (by Henry F. Parmelee), of New Haven, Conn., and Briesen & Schrenk (by Hans v. Briesen), and Karl Pohl, all of New York City, for complainant.

Lind, Shlivek, Marks & Brin (by Max Shlivek), of New York City, and Cummings & Lockwood, of Stamford, Conn., for defendant.

HINCKS, District Judge (after stating the facts as above).

Although I have separately stated the facts of this case and my controlling conclusions, the importance of the case, and, even more, the importance of the principles of law involved, seem to me to justify a fuller discussion.

The first glimpse of the facts discloses that Wm. H. Dobbs has no part in the corporate organization of the defendant. Yet, the defendant is distributing its product under his name. Such use by the defendant of the name of one not a part of its organization, in view of its close similarity to the name "Dobbs," so long used by the plaintiff and its predecessors and so thoroughly established as indicating the plaintiff's product, clearly gives rise to an inference of fraud. This inference must stand unless rebutted or explained. In an apparent effort to offset this inference, the defendant has introduced much evidence to show that precautions were taken not only by itself but also by Wm. H. Dobbs and Bert Pope, Inc., to prevent confusion amongst the purchasing public between the plaintiff's product under the name "Dobbs" and the defendant's product under the name "Wm. H. Dobbs." But since on the evidence it is clear that confusion has resulted, irrespective of the bona fides of these efforts (which the plaintiff disputes), these facts at most attest an effort to minimize the damages resulting from the tort, and standing alone do not constitute a defense to the plaintiff's right of action, at least against the defendant herein.

Nor do the other facts exonerate the defendant from this imputation of fraud. On the contrary, the evidence furnishes clear and convincing confirmation of that imputation. It is wholly clear that Wm. H. Dobbs personally had never acquired any particular reputation in the hat trade in New York City, to which his activities up to the time of his association with the defendant had been almost wholly confined; outside of New York he was wholly unknown. The fact that the defendant, whose president had had a long experience in the hat business, was ready to split its earnings with Wm. H. Dobbs either directly or indirectly through interposed corporations can only be attributed to a desire to acquire the name for its propensity to mislead and confuse the public to the defendant's gain and the plaintiff's hurt. There is nothing here to show that the name had any legitimate "residual advantage" to Wm. H. Dobbs, within the meaning of the opinion in Waterman Co. v. Modern Pen Co., 235 U. S. 88, 35 S. Ct. 91, 59 L. Ed. 142.

The form of the relations between Wm. H. Dobbs and the defendant and their subsequent history serve but to confirm this conclusion. The interposition of Bert Pope, Inc., a corporation in which, to be sure, Wm. H. Dobbs had a stock interest, as the "distributor" of the defendant's product, cannot disguise the fact that the defendant itself under the name "Wm. H. Dobbs" sold the hats which it manufactured. To be sure, Bert Pope hired and directed the salesmen; he may have "approved" the design of the product. But Bert Pope, Inc., including Wm. H. Dobbs, its officer and employee, did nothing in connection with the distribution of the product that is not ordinarily performed by a sales manager of the manufacturer. That the defendant manufacturer had a right to employ Bert Pope, Inc., and Wm. H. Dobbs to assist in its sales I have no doubt. That it could com-

pensate them for their services on a contingent basis I have no doubt. But all this the defendant could do and can still do without poaching on the plaintiff's good will.

The fraudulent character of the defendant's conduct is further manifested by the calculated deliberation with which it subordinated its own name in the merchandising of its product to the name which it had attempted to hire. Instead of emphasizing its product as its own, it has consistently and deliberately designated it, and encouraged others to designate it, by the name of "Wm. H. Dobbs" alone. On the women's hats of its manufacture, it has imprinted the Wm. H. Dobbs facsimile on the sweatband; its own name nowhere appears on the product. On the men's hats, the Wm. H. Dobbs name and crest are conspicuously printed on the sweatband or lining, and its own name is relegated to a paper size-label pasted to the felt beneath the sweatband. The hatboxes, though they bear no resemblance to those of the plaintiff or its predecessors, are conspicuously marked with the Wm. H. Dobbs name and crest; the defendant's name nowhere appears thereon. The defendant's shipping labels, salesmen's cards, invoices, and stationery, to be sure, show the defendant's name. But such papers are not normally seen by the ultimate consumer. And even these papers stress the legend, "Sole Manufacturers of Wm. H. Dobbs Hats." And in the advertising of the product, most of which is done by the defendant's retailers but with the defendant's acquiescence, the defendant's name is wholly absent. The conclusion is irresistible that the use of the name by the defendant was an act deliberately intended to enable the defendant to reap the plaintiff's harvest by indirect imposition upon the purchasing public.

■ And so the defendant in its answer seeks to justify the use of the name under a claim of right derived from the contract in evidence as "Exhibit R."

It may be noted at the outset that Exhibit R purports to license the defendant to use the name "Wm. H. Dobbs" in the manufacture only of men's felt hats. It contains no authority to use the name in connection with ladies' hats. The defense of a special license is therefore at most a defense pro tanto. However that may be, it is apparent that the defendant's use of the name is with the full consent of Wm. H. Dobbs, and it makes no difference for present purposes whether the license upon which the defendant relies for its justification is a special license such as set forth in Exhibit R or a license implied from the underlying facts.

In any event, this license, according to the plaintiff, is at most an attempted assignment of a trade-name in gross, and such an assignment, plaintiff contends, is illegal and ineffective. The plaintiff cites many cases in support of this contention but makes no effort to reconcile the doctrine of these cases with the remark of Justice Holmes in Waterman Co. v. Modern Pen Co., supra, at page 96 of 235 U. S., 35 S. Ct. 91, 93, 59 L. Ed. 142, where it was said: "While it very well may be true that the transfer of a name without a business is not enough to entitle the transferee to prevent others from using it, it still is a license that may be sufficient to put the licensee on the footing of the licensor as against the plaintiff."

Does this mean that any man who has no business, but who happens to have a name which others have made valuable as a trade-name, may license another to use the name in competition with the proprietor of a trade-name? I think not. Such a holding, impliedly authorizing one to capitalize the nuisance value of his name, would be an invitation to blackmail and deception.

The language quoted must rather be given such scope as the underlying facts require, and the opinion on its face shows that the learned justice had before him the case of "a man who for years has been trying to do business," "who has established himself in the business," and who assigns to a partnership of which he becomes a member—at least to the extent that "he had pecuniary reasons for wishing to see [it] succeed"—"his name and whatever good will he has." By such an assignment, it was said, the transferee derived the immunity which the transferor enjoyed as against a plaintiff of the same family name who was first in the field of competition.

This decision, I think, does not reach the facts of the case at bar, and so its authority cannot sustain the validity of the purported license here; for at the time of the attempted transfer, the only pecuniary value of this name to Wm. H. Dobbs or any one else was its nuisance value. Nor did Wm. H. Dobbs, like Waterman, couple the assignment of his trade-name with the transfer of his business and its good will. Cf. Kidd v. Johnson, 100 U. S. 617, 25 L. Ed. 769.

■ But it is not necessary to base my decision upon the sole ground of the invalidity of the attempted license of the name; for even if the license were held valid, under the Waterman Case it would pass only such immunity

as the licensor theretofore enjoyed. And I am satisfied that at the time the "license" was given, the licensor, Wm. H. Dobbs, as against the plaintiff, had no right himself to use his name as the defendant herein has subsequently used it. Thus by the license the defendant, as against the plaintiff, acquired exactly nothing.

This conclusion depends upon the limitations which attach to a man's right to use his own name in his own business, a subject upon which there is much uncertainty in the law.

One of the earliest cases on this point in England seems to have been that of Burgess v. Burgess, 3 DeG. M. & G. 896, decided in 1853. There the bill and affidavits in support thereof show that the plaintiff's predecessor had first adopted the name of "Burgess's Essence of Anchovies" long prior to its use by the defendant, and that large quantities of the product had been sold by the plaintiff and his predecessor under a label which to a certain extent the defendant had imitated. But the published report of the case, at least, does not show any allegation or evidence that the plaintiff's name had acquired a secondary meaning with the public or that the public had been in fact confused or deceived as a result of the defendant's product. Yet portions of the defendant's shop sign and label which were calculated to mislead were finally enjoined; but the Court of Appeals declined to enjoin all use of the defendant's name in connection with the sale of his product because, in essence, such use of the name did not serve to mislead the public. And that this was the gist of the holding was emphasized in the case of Massam v. Thorley's Cattle Food Co., 14 Ch. Div. 748.

But then came the case of Turton v. Turton, 42 Ch. Div. 128 (1888). There the plaintiff corporation, Thos. Turton & Sons, and its predecessors had been in the steel business in Sheffield for upwards of forty years. The defendant, John Turton, had been engaged in a similar business, also in Sheffield, only a mile away from the plaintiff's works, first under his own name, then under the partnership name of Turton & Lawton, and then under the firm name of John Turton & Co., in all for some twenty years. Apparently, in this litigation it was conceded that his right to do business under the name John Turton & Co. had been established beyond restraint. But at that stage he took into his partnership two sons, and changed the firm name to John Turton & Sons. That name the plaintiff sought unsuccessfully to enjoin. Lord Justice Esher, Master of Rolls, said, a man "may rightly use

his own name." And again, "He is doing what he has an absolute right by the law of England to do." And so the case is frequently cited for the proposition that a man has an absolute right to use his name in business, even though its use result in the deception of the public to the hurt of a plaintiff who had earlier established the name with a secondary meaning. But a careful analysis of the several opinions on the appeal will leave one in considerable doubt as to whether such was the essence of the decision. For Esher, L. J., in an effort to bring his opinion into harmony with that of Burgess v. Burgess, emphasizes the fact that the defendant Turton in the use of his name made no *false* representation. According to Lord Esher, the defendant, who it must be remembered had already established his right to use the name "Turton" in one firm name, had, by changing from Turton & Co. to Turton & Sons, merely announced to the trade, as he properly might, that he had taken his sons into partnership. It is quite consistent, even with Lord Esher's opinion, that if there had been evidence showing that the change had the effect of a false representaion to the public, the decision might have been otherwise. And that the decision was predicated upon a complete absence of actual confusion on the part of the purchasing public even more clearly appears in the opinion of the other justices who participated in the appeal. There, unlike the case at bar, the defendant was not marking its name on its product and engaging in extensive advertising. And there was no evidence whatever tending to show that the course of business of the parties was such that any misunderstanding on the part of the customers could not and would not promptly be rectified. At most, the plaintiff was subjected to the possibility of inconsequential inconvenience, but to no real damage.

In short, I am unable to find any English case that refuses relief to a plaintiff whose name has been so established in the trade that its mere application to the product of a newcomer in the business of the same name will operate to confuse and deceive the public to the plaintiff's damage.

In the United States the courts have frequently used general language to the effect that a man has an absolute right to the use of his own name. See Handler & Pickett, 30 Col. L. R. 196 et seq. But a careful reading of such cases will disclose that often the language used is broader than the facts require, and that the cases were ones in which confusion could effectively be averted if the new-

comer were required only to qualify his use of the name by prefix, suffix or explanation. Some of the earlier cases, such as Meneely v. Meneely, 62 N. Y. 427, 20 Am. Rep. 489, failed to recognize that the mere use of the name, even though the use were literally truthful, might convey a false impression to the public. But more recently in such a case the same court has sustained an injunction wholly precluding the use of the surname on the product. Westphal v. Westphal's World's Best Corp'n, 216 App. Div. 53, 215 N. Y. S. 4, affirmed 243 N. Y. 639, 154 N. E. 638.

The extent to which a man may be precluded from the use of his name on account of its prior use by another has never been clearly defined by the Supreme Court. In the case of Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 25 S. Ct. 609, 614, 49 L. Ed. 972, the court declined to enjoin the use of the name "Remington" in combination with the corporate name of "Remington-Sholes." In commenting upon the plaintiff's claim that the defendant's trade-name had been adopted because of a family reputation in the typewriter business, the court said: "That does not in itself justify the assumption that their purpose was to confuse their machines with complainant's; or that the use of that name was in itself calculated to deceive." An analysis of the case will disclose that the decision was predicated upon what the court there deemed to be the fact of the case, namely, that the use of the name in question was not "in itself calculated to deceive." Any doubt on this point, however, is resolved by the opinion in the Waterman Case, where it was said with particular reference to the Howe Scale Case: "But, whatever generality of expression there may have been in the earlier cases, it now is established that when the use of his own name upon his goods by a later competitor will and does lead the public to understand that those goods are the product of a concern already established and well known under that name, and when the profit of the confusion is known to, and, if that be material, is intended by, the later man, the law will require him to take reasonable precautions to prevent the mistake." How far one may be required to go to prevent such mistakes, that court did not indicate.

The case of Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554, 28 S. Ct. 350, 52 L. Ed. 616, also requires analysis. There the trial court enjoined the newcomer from "carrying on a safe and vault business in the name of 'Hall Safe & Lock Company,' or any name of which the name 'Hall' is a part, and from marking their safes with any name of which the name 'Hall' is a part, or from advertising, or from offering for sale safes or vaults as 'Hall's Safe,' or by any name of which the name 'Hall' is a part, etc., etc." This injunction was sustained by the Circuit Court of Appeals for the Seventh Circuit (143 F. 231) on the ground that the newcomer there involved was by contract estopped from the use of the family name in the business and on this ground expressly distinguished the case from that of the Howe Scale Company. And while the Court of Appeals also found in the Hall Case deception and confusion, which was absent in the Howe Case, the statement of facts shows only that the confusion was such as resulted from misleading signs used by the newcomer and its agents. Quite clearly, the factual situation was such as not to warrant the conclusion that the use of the name "Hall" on the safes or in advertising would necessarily operate to confuse and deceive. In the Supreme Court, the decree below was reversed because of error in finding the defendants estopped by contract from the use of their name. The right of the newcomer to use the name "Hall" in its corporate name was not involved in the appeal, because theretofore it had "accepted a decree forbidding it to go on under the above name." And the court, notwithstanding the reversal of the decree below as too broad, concluded by the observation that "the confusion produced * * * through his use of signs and advertisements calculated * * * to mislead * * * must be stopped." But, under the facts, it was felt that an injunction "against using any name, mark or advertisement indicating that" "the newcomer is the successor of the original company or *that its goods are the product of that company or its successors*, or interfering with the good will bought from him," would sufficiently protect the plaintiff.

But where the plaintiff's name is so associated with its product that the use of a surname on the defendant's goods will deceive the ordinary purchaser, such use of the name will be wholly enjoined even as against a corporate defendant deriving the name from one of its incorporators and stockholders. Westphal v. Westphal's World's Best Corp'n, supra; De Nobili Cigar Co. v. Nobile Cigar Co. (C. C. A.) 56 F.(2d) 324; Vick Medicine Co. v. Vick Chemical Co. (C. C. A.) 11 F.(2d) 33; Garrett v. T. H. Garrett & Co. (C. C. A.) 78 F. 472. See, also, L. Martin Co. v. Martin & Wilckes Co., 75 N. J. Eq. 39, 71 A. 409, af-

firmed 75 N. J. Eq. 257, 72 A. 294, 21 L. R. A. (N. S.) 526, 20 Ann. Cas. 57. And the Waterman Case holds that, in measuring the rights of a defendant to the use of its name, there is no valid distinction between corporations and individuals.

In the case of Jergens Co. v. Bonded Products Corp. (C. C. A.) 21 F.(2d) 419, 424, it was recognized that even the use of his proper name by one might operate as a misrepresentation that his goods were those of another. It was also stated that "if any relief is to be given against unfair trading, it should be such as will be effective." But under the precise facts there involved the court, apparently upon a finding that confusion would in fact be thereby avoided, limited the injunction so as to allow the defendant to show the proper name on the side (but not the top) of the wrapper, but wholly prohibited the defendant from the use of the proper name as a part of the title or designation under which its product was marketed. Chickering v. Chickering & Sons (C. C. A.) 215 F. 490, and Royal Baking Powder Co. v. Royal (C. C. A.) 122 F. 337, also are cases in which limitations on the use of the name were found sufficient without its complete expurgation.

The facts of the case at bar are such that Wm. H. Dobbs himself could not use the name "Dobbs" in the marking of hats publicly offered for sale or in advertising hats for sale, without deceiving and confusing the public to the plaintiff's damage. That such deceit and damage have resulted from his operations as heretofore conducted in conjunction with Bert Pope, Inc., and the defendant, is only too clear on the evidence. More doubtful, perhaps, is the task of determining now whether any explanatory suffix to the name, such as "not connected with the original Dobbs," would suffice to avoid the confusion.

The efficacy of such prefixes obviously is affected by psychological considerations, a surer understanding of which is much to be desired. The field seems not to have been yet cultivated by the scientific psychologist. Cf. Isaac on Traffic in Trade-Symbols, 44 Harv. L. R. 1210. But surely a reading of the long and widespread litigation that has grown out of the use of such names as "Baker" and "Rogers" (for a convenient review of which see Nims on Trade Marks, p. 125 et seq.) leads one to question the efficacy of such limitations. And, obviously, halfway limitations inadequate to prevent confusion, propagate litigation, devastating uncertainty in business, and a cynical reaction to the administration of law. Such results cannot be justified by a false tenderness for the rights of the individual. To be sure, he is entitled to protection in all proper use of his name, but not to a use which, though true to the few fully informed, is false to the many who are only partially informed.

Since the only purpose of an explanatory suffix is to prevent confusion between the impressions conveyed by the defendant's use of the name and those conveyed by the plaintiff's use of the name, the efficacy of such a suffix will largely depend upon the connotations which the public has become habituated to attach to the plaintiff's use of the name. Since this name has acquired its secondary meaning largely by advertising, that fact and the content of such advertising will indicate the association of ideas which attaches in the public mind to the name. The evidence shows that the plaintiff's advertising has emphasized the surname only. It is a fair inference that the public has long since forgotten, if it ever knew, De Witt Dobbs, the man, and Dobbs & Co., the plaintiff's predecessor of which he was the president. The surname alone remains in the public mind as an identification mark about which cluster associated ideas such as quality and style in headgear. The name has become a purely impersonal symbol. It no longer signifies anything as to the place of manufacture, or the personal identity of the manufacturer.

This, the evidence fairly indicates, is the meaning of "Dobbs" to the public. Precisely the same images are evoked by the sight or sound of "Wm. H. Dobbs," and the effect is no different if followed by such a phrase as "not connected with the original Dobbs." For the eye of the purchaser, long taught to identify the product by the name Dobbs alone, promptly registers the identity as complete upon catching the surname without noticing and pondering the significance of initials or suffix. And even the occasional purchaser who notices the suffix is not enlightened. For one who has known of one Dobbs only, suddenly confronted with the suggestion that there are in existence varieties of the species, is not informed which Dobbs is "his" Dobbs. Confusion is created by the very explanation intended to avert confusion. The purchaser whose impressions have been gradually acquired through continuous advertising cannot himself mentally locate the origin of his impressions as to time or place. And it is not to be expected that a hat clerk who chances to wait on him can accurately trace his impressions.

And so here, I conclude, Wm. H. Dobbs was precluded by the combination of the public interest and the plaintiff's right from using even his own name on the product or in advertising or elsewhere as the designation or as a part of the designation of the product. This conclusion has equal application to the use of the name on the hat box. For the public knows the product by the name, not by the box. Subject to these limitations, however, he had the right to manufacture and sell hats under his own name. He could lease or buy factories or stores, he could hire help, and could carry on a thousand other incidents of business under his own name, without causing any confusion.

Such limitations of the right as I have indicated above, nowadays, involve no real hardship, for a corporate franchise now is easily within the reach of all. Nor, nowadays, does the adoption of a trade-name other than the family name involve the reproach of doing business under false colors nor, in the usual case, impede the development of a legitimate good will. That this is so is indicated by the general run of names of newly organized corporations. In an age when by corporate activity, mass production, and national distribution, the truly personal element has been so largely squeezed out of business, there is naturally less legitimate pecuniary value in a family name. Any other name is as valuable and as available for all legitimate purposes. Formerly, before the age of advertising, when good will in business was slowly developed from personal contacts, the situation may have been otherwise.

But in advertising hats of his manufacture or distribution, more delicate questions arise. There is a reasonably clear distinction between "display" advertising and "reading matter." In general, the name used in connection with display advertising, where it is seen principally by casual observers, will, under the facts of this case, produce confusion. If used in matter of a recitative or informative set-up, its tendency to confuse can only be determined on a full consideration of all the facts. The question would involve the substantial accuracy of the reading matter, both literally and as the purchasing public would interpret it.

Now, obviously, a court cannot pass upon the misleading propensities of advertising matter not yet formulated. And especially since the fairness of the impression conveyed by advertising depends on such delicate factors as stress of voice, emphasis, and arrangement of type, as well as subject-matter, it is not practicable to lay down any rule more definite than that the advertising matter must be truthful, both in fact and in the impression conveyed, in view of the existing background. Any injunction, therefore, which would issue on the facts of this case against Wm. H. Dobbs if he were a party, should wholly enjoin all use of the word "Dobbs" on the product and its containers, and in the designation of the product, and should further prevent use of the name in advertising any product so as to cause confusion between the product of Wm. H. Dobbs and of the plaintiff, or otherwise to mislead the public to the plaintiff's hurt. Such a decree would, I think, be effective to prevent such a spread of litigation as attended the use of the Baker name, for example. And if by the generality of the provisions last above set forth, uncertainty should result, at least it would be such as could promptly be settled by application of the one party to amend the decree so as to authorize the use of a specific advertisement, or by the other party on a motion for contempt. Indeed, quite possibly many such details could be satisfactorily settled by conference in chambers without the need for formal motion and ruling.

And further, as against Wm. H. Dobbs, any injunction to which the plaintiff would be entitled, would need to be carefully restricted in its scope to the territory in which the plaintiff had clearly proved the currency of its name in its secondary meaning.

Such then, as I see it, are the mutual rights and liabilities between Wm. H. Dobbs and the plaintiff. If I felt that these rights of Wm. H. Dobbs were transferable by Exhibit R, or otherwise, I should grant an injunction against the defendant transferee along the lines indicated above. But, holding as I have above indicated, that under the particular facts as shown in this case, such rights as Wm. H. Dobbs had were wholly personal to him, and transferable neither to the defendant nor any one else, I hold that an injunction may issue against this defendant, without the limitations to which Wm. H. Dobbs would be entitled, wholly restraining it from all use whatsoever of the name "Dobbs," whether prefixed by initials or given names, or suffixed by explanations, either imprinted on any hats which it manufactures or sells or offers for sale, or on the containers thereof, or in advertising the same or otherwise in connection with its operations in the manufacture, distribution, and sale of hats.

I should perhaps make it plain that my reason for attempting to define the rights of

Wm. H. Dobbs, notwithstanding my holding that his rights were not transferable, was to facilitate a final settlement of this troublesome and important litigation by a single appeal—in case my own efforts prove unavailing to compose the peace between the parties.

The plaintiff is entitled to a decree, with costs, providing for the ascertainment of damages, and an injunction which, in the absence of defendant's consent as to form, may be settled in chambers in New Haven on five days' notice, or otherwise by agreement.