## CHAMPION SPARK PLUG CO. v. CHAMPION.

### No. 597.

District Court, E. D. Michigan, N. D.
June 9, 1938.

Owen & Owen, of Toledo, Ohio, for plaintiff.

Swan, Frye & Hardesty, of Detroit, Mich., for defendant.

TUTTLE, District Judge.

Plaintiff charges the defendant with both the infringement of the trade-mark "Champion" for spark plugs, and with unfair competition by using the name "Champion" in connection with the sale of spark plugs of defendant's manufacture. The defendant has not engaged in the business of manufacturing spark plugs until comparatively recently and then not really as a manufacturer, but simply as an assembly proposition. A spark plug contains three parts, one of iron, one of porcelain, and one of copper. The defendant has these made in three different places and he puts them together. The porcelain parts come to the defendant with the name on the porcelain.

It is fortunate that this suit comes before the court before defendant has gone far in the undertaking. This hearing was brought before the court on a motion by plaintiff for a temporary injunction. The case is at issue upon bill and answer. Counsel have agreed that the hearing be treated as a final hearing upon the merits and disposed of by final decree. A full hearing on the merits has been held.

■ In cases of this kind the court is confronted with two propositions from the general law, whether it be called trade-mark or unfair competition, or both. The trade-mark law is in reality for the purpose of protecting people against unfair competition. The purpose is to permit them to build up a business around that trade name by which the article is known and establish a good will which is valuable to the manufacturer.

Now that is the general law, and it is the intention of the law to protect people against that infringement of their rights.

■ On the other hand, we find the usual, general, common right of every man to use his own name in business if he does it properly.

The two rights I have mentioned are not inconsistent. The courts in defining the right of an individual to use his own name have not in any way detracted from the law which protects people against infringement of trade-marks and protects them against unfair competition.

Ultimately we come to know very many of the products of this world by one name and often the surname of some person who makes them in large quantities. We have the Dodge car. Horace Dodge and his brother began to manufacture cars, and the public knew them as the "Dodge Brothers car", but in a short time everyone thought of the car, and spoke of it, as a "Dodge". Walter Chrysler built an automobile. No one thinks about his given name. It is the "Chrysler". Henry Ford built an automobile, but no one thinks of it as a Henry Ford automobile or takes the time to say it. The trade knows it as the "Ford". The same is true of the Winchester Rifle, the Remington Rifle and the Savage Rifle. The public is inclined to associate the article with the manufacturer's surname.

The courts cannot interpret too broadly this right to use one's own name. That right must be interpreted as meaning a proper use. One can use his own name if by so doing he does not become guilty of unfair competition. The test to be applied to the right to use one's own name is the same as with reference to any other

name. The test to be applied under the law is, Was it unfair competition? Does it give to the public an article that they believe is manufactured by somebody other than the actual manufacturer?

There are hundreds and thousands of people in this country with the same surname. While each·has the general right to use his own name, he can't do it in a way to violate the law of unfair competition. There are thousands of men in the United States who have the name of Ford. It would be unfair for one Charlie Ford to ·go to making a small, low-priced automobile, and put it on the market under the name "Ford". It would confuse the public. People would buy the car made by Charlie Ford believing it was made by Henry Ford. It would be difficult to convince any court that the motive had been good.

It is easy for an individual to reason that his motives are good and that he does not want to deceive anybody. But it would be difficult to convince a court that the real purpose and result was not deception. People aren't going to talk about a Dodge car and a Jim Dodge car. They aren't going to talk about a Chrysler car and a Jim Chrysler car. They aren't going to talk about a Ford car and a Jim Ford car. They are not going to talk about a Savage rifle and a Jim Savage rifle. The public are going to call these articles by the surname of the first great manufacturer and any article bearing this surname is likely to be believed to have been manufactured by him. The fact that a man happened to have the surname "Ivory" would not give him the right to manufacture and sell Ivory soap or Jim Ivory soap. The reason why he cannot so use his own name is because it would result in unfair competition.

It is just like freedom of speech. We have the right of freedom of speech, but we can't slander; and we have freedom of the press, but we can't libel. We have the right to use our own name, but we don't have the right to use our own name if it violates a good trade-mark, or we don't have 'the right to use our own name in a way which makes us guilty of unfair competition. Shaver v. Heller & Merz Co., 8 Cir., 108 F. 821, 65 L.R.A. 878.

██ Now here is this name Champion. As far back as my memory goes with reference to spark plugs, Champion was the best known spark plug in the country.

It is no more difficult to carry along those two thoughts than it is to carry along the thought of freedom of speech and the law relative to slander. We have done that through the years. It can be done by the courts. It is like liberty. We have the liberty to do what we desire so long as we don't violate the law. Now we have the right to use our own names so long as we don't violate the law, and one of the laws of this country—or two of them—are the law of trade-mark and the law of unfair competition; and we cannot use our own names in such an unfair way that it infringes a good trade-mark or makes us guilty of unfair competition.

The Champion Spark Plug Company, through a long period of years, has spent about twelve million dollars in advertising and has made about a half billion spark plugs, an ever-increasing business and a name that is known to every school boy and school girl. The name has come to go with the article. They have grown up together until it is so known.

There are thousands of people by the name of Champion in the United States. The name Champion in connection with spark plugs means spark plugs made by plaintiff. No sooner does the defendant go into the business than he writes letters, the evident purpose of which was to connect himself and his product with the well-known "Champion" spark plug. Some one individual might be so careful that every time he speaks he would say, "This isn't the regular Champion spark plug", but men in business aren't going to do that. Even though the boss, the man that was trying to use his own name, was vigilant all the time, the men working for him and the men to whom he sells the goods are not going to be that careful. The defendant himself has not been so careful. He has tried to make the public think his spark plugs were made by plaintiff.

Running through this case there has been an effort on the part of the defendant to hitch himself to this great name of Champion in the spark plug industry, rather than to isolate himself and start a little business and build it up on its own merits. When he was working for others and they gave him a commission on the business, it was because his name was Champion. They made the "Champion" of defendant's name their big advertisement.

Defendant says he complained because his employer made such an unfair use of his name. Defendant then started a business of his own in which he for a time used his given name "Prosper" coupled up with the initial "C" as the name of his spark plug, and in advertising that plug he linked himself up with the name "Champion" which stands for these fine spark plugs of plaintiff which have stood the test of more than a score of years.

Plaintiff complained of these attempts by defendant to trade on the reputation of the widely known "Champion" spark plugs and a number of letters were exchanged by the parties. Instead of discontinuing his efforts to trade on the "Champion" reputation, defendant changed the name of his spark plug to "Prosper Champion", which he permanently and prominently stamps or prints on the portion of the porcelain insulator of his plugs and prints repeatedly on the cartons and containers in which he packs his plugs for sale.

It is easy to tell whether the conduct of a defendant is fair or foul. This law is given an appropriate name of "unfair competition". One can feel the unfairness better than one can express it from the bench. This defendant has intentionally obtained an unfair advantage resulting from the fact that his name was Champion. He puts his surname "Champion" on the spark plugs he sells. He does this not because his own name would help sell the spark plugs but because the name "Champion" would help by leading people to believe the spark plugs were made by plaintiff.

In his literature the word "Champion" is repeated over and over again, all the way through from the very beginning. It is not a fair use of a name. It is taking an unfair advantage of a name and using it for unfair competition.

■ In situations where a fraudulent intent to trade on the name or reputation of another is so apparent as it is here, courts go farther in awarding relief by way of injunctions than they do in cases where bad faith is not so apparent. H. E. Winterton Gum Co. v. Autosales Gum & Chocolate Co., 6 Cir., 211 F. 612, 618; Vogue Co. v. Vogue Hat Co., 6 Cir., 6 F.2d 875. A party who is entitled to re-lief against unfair competition "is entitled to effective relief; and any doubt in respect to the extent thereof must be resolved in its favor as the innocent producer and against the petitioner [defendant], which has shown by its conduct that it is not to be trusted." Warner & Co. v. Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 618, 68 L.Ed. 1161.

■ The certainty I feel as to the right of plaintiff to the relief prayed on the theory of unfair competition has made it unnecessary for me to give as careful consideration to the trade-mark features of the case as I otherwise should have done. I don't discover any real connection between a spark plug or the spark plug business and the word Champion such that I can say it is descriptive rather than being fanciful. I am not so clear about the validity of the trade-mark as I am about the conduct of the defendant constituting unfair competition. The relief would be the same on either ground and I grant it on both grounds.

An injunction will issue restraining the defendant from advertising or in any manner stating or representing directly or indirectly in writing or orally that defendant is or ever has been in any way connected with the plaintiff company or with its business; from in any way using the word "Champion", either alone or in any form or combination with other words, as the name of a spark plug manufactured by or for defendant for sale to the public; from in any way selling or disposing of or encouraging the sale or disposition of defendant's plugs when Champion plugs are called for or desired; and from employing the name or style "Prosper Champion Manufacturing Co.", or any other or similar name containing the word "Champion" in connection with the business of manufacturing or selling spark plugs or other merchandise of substantially the same descriptive properties.

The number of spark plugs sold by defendant is so small that I hold the damages and profits are nominal and assess such damages and profits at six cents. Plaintiff will recover the costs of this suit to be taxed.

This opinion may stand as my findings of fact and conclusions of law.