## AMERICAN VISCOSE CORPORATION v. CROWN CRAFT, Inc., et al.

District Court, S. D. New York.
June 23, 1939.

Howson & Howson, of New York City, for plaintiff.

John P. Chandler, of New York City, for defendants.

COXE, District Judge.

This is a motion by the plaintiff for a preliminary injunction. There is also a cross-motion by the defendants to dismiss the complaint for insufficiency as well as for lack of jurisdiction.

The suit is for infringement of the plaintiff's registered trademark, No. 265,-436, for rayon yarn, consisting of the word "Crown" with a picture of a crown, and also for unfair competition.

The plaintiff manufactures and sells rayon yarn. The "Crown" trademark was adopted by Viscose Company, the direct predecessor of the plaintiff, in 1925, and was registered by that company for rayon yarn on December 24, 1929. The plaintiff succeeded to the business and assets of Viscose Company in 1937, and now has full title to the trademark.

Since the adoption of the trademark, the plaintiff, or its predecessor, has sold millions of pounds of "Crown" rayon yarn annually. During the period from 1930 through 1938, upwards of $3,000,000 was expended by the two companies in advertising the brand. The result has been that the public has come to recognize the "Crown" mark as meaning rayon yarn of the plaintiff's manufacture.

Commencing in 1930, an extensive campaign was launched to popularize the

"Crown" brand among the consuming public. There had previously been some dissatisfaction with rayon fabrics or garments owing to their lack of dependability. To meet this situation, Viscose Company inaugurated a policy of permitting "Crown" labels to be used on articles made of "Crown" brand yarn, provided such articles were able to satisfy certain tests prescribed by the official laboratory of the National Retail Dry Goods Association. This policy was continued by the plaintiff. The labels employed for that purpose carry not only the words "Crown Rayon", but also the words "Crown Tested" or "Crown Tested and Approved". They thus assure the purchaser that the yarn in the article is "Crown" yarn of the plaintiff's manufacture, and that the article itself has been tested by the official laboratory of the National Retail Dry Goods Association. The significance of these labels has been elaborately advertised, and is well understood by the consuming public.

The defendant Davis has been in the business of manufacturing wearing apparel for many years. During the period from 1925 to 1937, he carried on business in New York City through a corporation known as Barney Davis & Co., Inc. In December of 1937, he organized a new corporation under the name of Crown Craft, Inc., and soon thereafter commenced making and selling ladies rayon shirts which were marked "Crown Craft", with the picture of a crown. On February 6, 1938, one of the large department stores in New York City, which had previously featured the plaintiff's "Crown" product, advertised in a New York newspaper the defendants' garments as "Crown Craft Tailored Shirts in washable Crown-Tested Rayon". The defendant Davis admits that he was at all times thoroughly familiar with the plaintiff's trade-mark, and knew of the use of "Crown" labels on articles made of the plaintiff's yarn.

I have no doubt of the validity of the "Crown" trademark. It has been used continuously since 1925 by the two Viscose companies in the sale of rayon yarn, and was registered for that class of material in 1929. The advertising was designed primarily to indicate the source or origin of the product; in that way, the public was taught to associate "Crown" rayon yarn only with the plaintiff. It is no objection to the validity of such a mark that it also serves incidentally to designate the particular quality of the material. Menen-

dez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L. Ed. 526; Keebler Weyl Baking Co. v. J. C. Ivins' Son, D.C., 7 F.Supp. 211.

The defendants, with full knowledge of the trademark, and of the general character of the plaintiff's business, adopted a mark closely resembling the plaintiff's mark. They offer no plausible excuse for taking such a mark, and I think the inference is plain that in doing so they had a deliberate purpose to deceive the public, and thus secure the plaintiff's customers. That the mark is fairly susceptible of such an inference is well illustrated by the newspaper advertisement of February 6, 1938, indicating that at least one large department store in New York City believed that in offering the defendants' goods for sale it was handling articles made of plaintiff's yarn. It is no answer that the defendants are not responsible for the unauthorized statements of their customers, for the defendants themselves knowingly placed in the hands of these customers the very means by which they were able to mislead the public. Chesebrough Mfg. Co., v. Old Gold Chemical Co., 6 Cir., 70 F.2d 383, 385; John H. Woodbury, Inc., v. William A. Woodbury Corp., D.C., 23 F.Supp. 162, 168. I think, therefore, that the charge of infringement and unfair competition has been substantiated.

The defendants insist that they do not compete with the plaintiff in the sale of rayon yarn, and cannot, therefore, be held either for trademark infringement or for unfair competition. It is settled, however, that "a trade-mark protects the owner against not only its use upon the articles to which he has applied it, but upon such other goods as might naturally be supposed to come from him". L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272, 273. See also Potter-Wrightington, Inc., v. Ward Baking Co., D.C., 288 Fed. 597, affirmed 1 Cir., 298 F. 398; Industrial Rayon Corp. v. Dutchess Underwear Corp., 2 Cir., 92 F. 2d 33.

The jurisdictional question needs little comment. The basis of jurisdiction is the infringement of the plaintiff's registered trademark; that in itself is enough to support the claim for unfair competition. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148. The amount involved depends on the value of the good-will, which is alleged to be over

$100,000. Coca-Cola Co. v. Allen, D.C., 274 F. 481.

The motion of the plaintiff for a preliminary injunction is granted, and the motion of the defendants to dismiss the complaint denied.