**JOHN T. LLOYD LABORATORIES, Inc., et al. v. LLOYD BROTHERS PHARMA-CISTS, Inc., et al.**

**No. 9151.**

Circuit Court of Appeals, Sixth Circuit.

Nov. 30, 1942.

Francis A. Hoover and Oliver G. Bailey, both of Cincinnati, Ohio, for appellants.

Truman A. Herron, of Cincinnati, Ohio, (Edward B. Evans, Wood, Arey, Herron & Evans and John N. Gatch, all of Cincinnati, Ohio, on the brief), for appellees.

Before SIMONS, HAMILTON, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

John Uri Lloyd, author, teacher and pharmacist, was a distinguished exponent of the eclectic school of medical thought. In collaboration with a celebrated teacher of materia medica, he originated and developed a long list of pharmaceutical preparations of plant derivation, which acquired widespread usage by prescription of eclectic physicians. These physicians, of whom there are some four thousand, are primarily herbalists.

The principal achievement of John Uri Lloyd was his contribution to the solution of the problem of extracting the medicinal properties of plants in such manner as to preserve maximum therapeutic values. He invented distilling and percolating equipment to that end, and developed numerous special "menstruums," or solvents, for extracting particular products from various drugs. The ingredients of these "menstruums" were usually a simple mixture of alcohol and water, but other components were also used. The formulae of these "menstruums" were carefully secreted and their disclosure guarded.

In partnership with his brothers, John Uri Lloyd organized a pharmaceutical business, later incorporated under the laws of Ohio as Lloyd Brothers Pharmacists, Inc., for the purpose of manufacturing and distributing medicines generally prescribed by eclectic physicians and, to some extent, by non-eclectics.

After the Lloyd family pharmaceutical business had been conducted successfully for many years, John T. Lloyd, at the request of his father, John Uri Lloyd, left his position on the staff of Cornell University, from which he had been graduated as a Ph.D. in Biology, and became associated with his father's company. The son started in to learn how the Lloyd preparations were made, attended lectures on pharmacy and medicine at the Cincinnati College of Pharmacy, the University of Cincinnati, and the Eclectic School of Medicine in that city. He worked under his father in the research department and, when the latter's health failed, assumed charge of the laboratories.

After his son had been associated with him in his life work for many years, John Uri Lloyd died in 1936, owning the entire capital stock of Lloyd Brothers Pharmacists, Inc., except a few shares held by his son and his two daughters. His will directed that three named trustees should hold his stock in the corporation and dispose of it in solido. The will provided that the proceeds from the sale of the stock should be divided among the testator's two daughters and his son, John T. Lloyd.

Over the litigated opposition of the son, the testamentary trustees sold the stock of the testator in Lloyd Brothers Pharmacists, Inc., to S. B. Penick & Company, a Delaware corporation. At the instance of its new controlling stockholder, Lloyd Brothers Pharmacists, Inc., on May 11, 1938, executed a bill of sale to S. B. Penick & Company of all its formulae, processes, inventions, personal property and assets, excepting only a specified sum of money and expressly "including its good will and the right to use its name." On August 1, 1938, its trade-marks and the good will connected therewith were assigned to S. B. Penick & Company.

John T. Lloyd did not resign his salaried position as vice-president of Lloyd Brothers Pharmacists, Inc., until a few days after he had been finally thwarted by the Supreme Court of Ohio in his effort to prevent consummation of the sale of his father's stock in that company. The share which the son received from the sale of his father's stock to S. B. Penick & Company aggregated more than $100,000.

In the latter part of 1938, John T. Lloyd obtained under the laws of Ohio a corporate charter for "John T. Lloyd Laboratories, Inc.," which was organized for the purpose of competing directly, in the sale of pharmaceutical preparations, with S. B. Penick & Company, doing business as Lloyd Brothers Pharmacists, Inc. His new corporation adopted and used in its business the trade-mark "Lloydson."

In leaving Lloyd Brothers Pharmacists, Inc., John T. Lloyd took with him a copy of the company's mailing list, embracing the names and addresses of its thousands of customers and prospective customers. This list was utilized by Lloyd's newly-organized company in the solicitation of sales for its pharmaceutical preparations, which were similar to those manufactured by the old company. Moreover, he took over with him to his new corporation the factory superintendent and the laboratory technician of Lloyd Brothers Pharmacists, Inc., both of whom had been long employed by that company and had possessed free access to its formulae and trade secrets.

The appellees, Lloyd Brothers Pharmacists, Inc., and S. B. Penick & Company, licensed to do business under the former's name, brought, under the trade-mark statutes of the United States, 15 U.S.C.A. § 81 et seq., the instant civil action in the District Court for Southern Ohio, praying damages and injunctive relief against appellants John T. Lloyd Laboratories, Inc., John T. Lloyd, individually, and Albert N. Brown, the laboratory technician who after thirty-one years of service had left the employ of Lloyd Brothers Pharmacists, Inc., to work for the appellant company.

Upon the evidence received at the trial, the district court found that purchasers and prospective purchasers of pharmaceutical preparations have been confused by the similarity between the corporate name of the appellee, "Lloyd Brothers Pharmacists, Inc.," and that of the appellant, "John T. Lloyd Laboratories, Inc.;" and that there has been like confusion between the names "Lloydson" and "John T. Lloyd" used by appellant John T. Lloyd Laboratories, Inc., and the names "Lloyd" and "Lloyd's," trade-marks owned and used by appellee, S. B. Penick & Company.

Accordingly, the district court enjoined the use by appellant corporation of the corporate name, "John T. Lloyd Laboratories, Inc." The use of the trade-mark "Lloydson" was also enjoined; but it was decreed that the appellant corporation was privileged to continue to use the trade-marks "Ferroloid," "Phytoloid," and "Echaloid."

Finding that the appellant corporation had published advertisements and issued circulars creating confusion and doubt as to whether the appellee corporation, S. B. Penick & Company, or the appellant corporation, John T. Lloyd Laboratories, Inc., is the successor to the good will of the business established by John Uri Lloyd, and as to whether John Uri Lloyd is now or was ever connected with the appellant corporation, the district court enjoined appellants "from representing that the business of John T. Lloyd Laboratories, Inc., is connected with, or is the outgrowth of, or in some way represents some extension of, or is the successor to, or constitutes in whole or in part, the business established by the late John Uri Lloyd and still being conducted by the plaintiff, S. B. Penick & Company, under the name of Lloyd Brothers Pharmacists, Inc."

The district court enjoined the appellant corporation from the manufacture and sale of medicinal preparations from formulae, secret processes, or technique imparted by John T. Lloyd or Albert N. Brown which had been obtained by them while they were employed in a confidential capacity by appellee, Lloyd Brothers Pharmacists, Inc.; and the individual appellants, Lloyd and Brown, were restrained from further disclosure to the corporate appellant of any such information so acquired by them. There was excepted from the operation of the injunction the use of what was termed the "mixing clear" process.

Utilization by the appellants, in whole or in part, directly or indirectly, of any mailing list obtained from appellees was also enjoined.

The decree below allowed the recovery by appellee, S. B. Penick & Company, from the appellant corporation, of profits and damages accruing from the infringement of its trade-marks, from the use of appellant's corporate name, "John T. Lloyd Laboratories, Inc.," from the use of appellee's mailing list, and the utilization of its trade secrets disclosed by the individual appellants John T. Lloyd and Albert N. Brown, and from "other acts of unfair competition." The appointment of a Special Master to ascertain such profits and damages was deferred, pending the determination of the issues on appeal.

 Accepting, in conformity with Civil Procedure Rule 52(a), 28 U.S.C.A. following section 723c, the district court's findings of fact, all of which are supported by substantial evidence and are not "clearly erroneous," it is obvious that appellants have been guilty of unfair competition and trade-mark infringement against which appropriate relief should be granted. In some respects, the relief decreed in the district court is approved; but approval cannot be given in full measure to the decree entered.

██ 1. The injunction against the use by appellants of the trade-mark "Lloydson" should remain in effect. The mere fact that its use was discontinued by them before the commencement of this action is no guarantee that they may not resume its use should the injunction be dissolved. If appellants have no such wrongful intent, no injury ensues to them from maintenance of the bar. Cf. Juvenile Shoe Co. v. Federal Trade Commission, 9 Cir., 289 F. 57, 59.

██ 2. Inasmuch as the abstraction by John T. Lloyd while an officer of Lloyd Brothers Pharmacists, Inc., of its valuable mailing list for use by the appellant corporation which he organized was a flagrant act of unfair competition, the utilization of that list by appellant was properly enjoined in paragraph 2(d) of the decree. The injunctive relief granted in this respect is quite inadequate, however, for the reason that the list has already been used by appellant in its initial solicitation of business from customers of appellee. The account-

ing for damages provided in paragraph 4 of the decree will be the only practicable redress obtainable by the appellee; and the Master should take this fact into account in ascertaining allowable damages.

3. The decree in paragraphs 2(c) and 3, relating to secret formulae, processes and technique, is found too broad and sweeping in its injunctive coverage. It is true that secret formulae and processes are property rights which should be protected by injunction against those who attempt to disclose or use them in violation of confidential relationships. Herold v. Herold China & Pottery Co., 6 Cir., 257 F. 911, 913. Cf. A. O. Smith Corp. v. Petroleum Iron Wks. Co., 6 Cir., 73 F.2d 531, 538.

The district court has found upon substantial evidence that appellants John T. Lloyd and Albert N. Brown obtained, in confidence, information as to formulae, processes and technique used by Lloyd Brothers Pharmacists, Inc., and disclosed to appellant corporation this information, which was utilized in the preparation of its products.

The proof offered upon the trial, however, failed to specify the secret formulae and processes wrongfully disclosed. Equitable relief is over-extended by the issuance of an injunction against the revelation of trade secrets insufficiently identified. No one should be placed in danger of citation and punishment for contempt for revealing an unspecified secret. A similar lack of sufficient evidence of what constituted trade secrets is met here as confronted this court in Herold v. Herold China & Pottery Co., supra. The same course lies open here as was there suggested by Judge Knappen. (257 F. pages 917, 918.)

The district judge is directed to entertain a motion, if made seasonably by appellees, for further hearing and introduction of additional evidence in camera, upon condition that appellee, S. B. Penick & Company, expressly offers full disclosure in camera of its alleged secret formulae and processes, which it contends have been wrongfully revealed and appropriated. Upon the hearing in camera upon the issue of the disclosure of trade secrets, appellants will be privileged also to introduce evidence.

4. The district court, in paragraph 2(b) of the decree, appropriately enjoined appellants from representing that the business of the John T. Lloyd Laboratories, Inc., is connected with, or the outgrowth or extension of, or successor to the business established by John Uri Lloyd; but erred in issuing a perpetual injunction restraining the appellant corporation from using the corporate name, "John T. Lloyd Laboratories, Inc."

It has long been settled that a man's name is his own property, which he has the right to use and enjoy as he does any other species of property. If his use of his name be reasonable, honest and fair, he is not liable therefrom for any incidental damage inflicted upon a business competitor. Brown Chemical Company v. Meyer, 139 U.S. 540, 544, 11 S.Ct. 625, 35 L.Ed. 247. Likewise, in the absence of a restrictive contract, or of fraud or estoppel, he has the right to use his own name as the whole or a part of a corporate name. Howe Scale Company v. Wyckoff, Seamans & Benedict, 198 U.S. 118, 25 S.Ct. 609, 49 L. Ed. 972.

In the instant case, appellant John T. Lloyd made no agreement whatever with appellees concerning the use of his own name or his future activities. But, as found by the district court, his choice of the corporate title, "John T. Lloyd Laboratories, Inc.," caused confusion in the pharmaceutical preparations market. This confusion was accentuated by advertisements and circulars put out by the appellant corporation.

Upon the whole record, it appears that the appellant corporation, having included the name of John T. Lloyd in its corporate title, has in all the circumstances failed of a good faith effort to so conduct its business as not to palm off its goods as those of the appellees. Such failure constituted, in our concept, unfair competition; and appropriate relief must be evolved upon equitable principles.

Knabe Brothers Co. v. American Piano Co., 6 Cir. 229 F. 23, 30, points the way. It was there held that, while a corporate defendant in an unfair competition suit had the right to advertise and make the most, by legitimate means, of a former connection of its managing officers and their familiarity with the manufacture of Knabe pianos, the use of the family name by the defendant corporation was subject to the stringent limitation that reasonable precautions be taken to make it clear that defendant's goods were of its own manufacture and

were not those of the plaintiff or its predecessors. Specific directions for the avoidance of confusion between the goods of the two piano manufacturing companies were carefully prescribed in the opinion and in the supplemental per curiam, 6 Cir., 232 F. 140. See, also, Stix, Baer & Fuller Dry Goods Co. v. American Piano Co., 8 Cir., 211 F. 271, 277, giving instructions upon the same subject matter.

Herring-Hall-Marvin Safe Company v. Hall's Safe Company, 208 U.S. 554, 560, 28 S.Ct. 350, 52 L.Ed. 616, furnishes further and consistent guidance. There, it was directed that a decree should be specific in forbidding the defendants the use of the name "Hall," either alone or in combination in its corporate name, on safes, or in advertisements, unless accompanied by information that the defendant was not the original Hall's Safe and Lock Company or its successor, and that the safe was not the product of the last-named company or its successors. It was decreed that, with such explanation, the defendants might use the Hall family name and might reveal that they were sons of the first Hall, brought up by him in the safe manufacturing business, and might otherwise state the facts.

Consult, also, Chickering v. Chickering & Sons, 7 Cir., 215 F. 490.

In an Ohio Superior Court opinion, French Bros. Bauer Co. v. Townsend Bros. Milk Co., 1925, 25 Ohio N. P. N. S., page 548, affirmed on appeal, 21 Ohio App. 177, 152 N.E. 675, Judge Marx recognized the same principles and authorities which we have followed in this opinion, and directed procedure similar to that which we are finding appropriate here.

We do not find Vick Medicine Co. v. Vick Chemical Co., 5 Cir., 11 F.2d 33, cited by appellees, to be inconsistent with our ruling in the instant case. For, while in that case a medicine manufacturing corporation was restrained from using "Vick" in its corporate name upon evidence that an existing corporation had previously manufactured and widely distributed medicinal preparations under the trade-mark "Vick's," the circumstances were utterly differentiable from the facts of the case at bar, in that the infringing corporation had deliberately procured as organizer and president an automobile tire salesman named Vick, for the purpose of marketing a certain West's grippe remedy under the name of "Vick's Grippe Remedy." The fundamental intent in the organization of the enjoined corporation was manifestly fraudulent.

Similarly, in another case cited by appellees, De Nobili Cigar Co. v. Nobile Cigar Co., 1 Cir., 56 F.2d 324, 326, the adoption of the corporate name by the enjoined corporation was obviously fraudulent in its inception. The court of appeals said that, on the facts of the case, it was plain that "when the defendant went into the cigar business, its purpose was to use its adopted name to sell its products as and for the cigars made by the appellant."

Paragraph 1 of the decree of the district court, enjoining use of the corporate name, "John T. Lloyd Laboratories, Inc.," must be stricken, and the case remanded for further procedure in conformity with this opinion. In the light of our discussion and under guidance of the cases cited, this court is confident that the district court will be able to reform its decree so as to afford adequate protection of the appellee, S. B. Penick & Company, against further unfair competition on the part of appellants in connection with the use of the latter's corporate name. The directions of the Supreme Court in Herring-Hall-Marvin Safe Company, supra, and of this court and the Eighth Circuit Court of Appeals in the Piano Cases supra, should furnish adequate guidance for the recasting of the decree by the able district judge.

5. No error is found in the allowance of damages as provided in paragraph 4 of the decree, except that no damages are allowable for use by the appellant corporation of the corporate name which it adopted. See Anchor Stove & Range Co. v. Rymer, 6 Cir., 97 F.2d 689. In our judgment, the district court wisely deferred the appointment of a Special Master to ascertain the damages, pending the determination of the issues of the cause on this appeal.

The decree of the district court is affirmed, with the amendments and modifications herein directed; and the cause is remanded for further procedure in conformity with this opinion.