## SOCIETE VINICOLE DE CHAMPAGNE v. MUMM.

### No. 357.

Circuit Court of Appeals, Second Circuit.

June 13, 1944.

Charles B. Brophy and Jackson, Nash, Brophy, Barringer & Brooks, all of New York City, for the appellant.

Stewart L. Whitman, James L. Duncanson, and C. P. Goepel, all of New York City, for the appellee.

Watson Washburn and Perkins, Malone & Washburn, all of New York City, for G. H. Mumm Champagne (Societe Vinicole de Champagne, Successeurs) and Associates, Inc.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

PER CURIAM.

If the defendant had wished to challenge Judge Woolsey's original holding that his name was not "Mumm," but "Mumm von Schwarzenstein," the time to do so was when the decree was entered in 1937; it is now too late. Indeed, he does not ask us to unravel what was then done; on the contrary, as we understand it, he rests his case upon his change of name at the time of his naturalization, when apparently by order of the court he became no longer "Mumm von Schwarzenstein," but merely "Mumm." The record does not explicitly show that his name was then changed in that way; but we so read his affidavit, and it seems to be an evitable inference from his argument. He complains that, having now become "Mumm," the decree operates to forbid all use of the only name by which he is, or lawfully can be, known. This, he says, the law will not do; for, although courts will often limit the use of one's surname by imposing upon it suffixes and the like, they never absolutely forbid it. Donnell v. Herring-Hall-Marvin Safe Co., 208 U.S. 267, 28 S.Ct. 288,

52 L.Ed. 481; Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U.S. 554, 28 S.Ct. 350, 52 L.Ed. 616; Waterman Co. v. Modern Pen Co., 235 U.S. 88, 35 S.Ct. 91, 59 L.Ed. 42; John T. Lloyd Laboratories, Inc., v. Lloyd Bros. Pharmacists Inc., 6 Cir., 131 F.2d 703, 707. We will assume for argument the correctness of this position, if Mumm's name had originally been "Mumm"; but it was not, and, furthermore, when he was naturalized, he did not have to drop "von Schwarzenstein." It is true that "von Schwarzenstein" had originally been a "hereditary title," and possibly also an "order of nobility," both of which Mumm would have been compelled to renounce, had he still possessed them. § 735(c), Title 8 U.S.C.A. But Judge Woolsey found (Finding 13) that the constitution of the Weimar Republic ("Provision 109") had abolished "public privileges, or disadvantages of birth, or status" and that "marks of nobility are considered only as part of the name." Again (Finding 62), that any distinction "between the family name and the so-called 'mark of nobility' * * * was obliterated by the provisions of the Weimar Constitution," and that the German name of the Mumm family was "Mumm von Schwarzenstein." We do not imply that the renunciation of a "hereditary title" or an "order of nobility" must inevitably involve the abandonment of the name by which an alien has been known. There are of course thousands of persons in this country who have family names, beginning "von," "van," "de" or "di"; and many of these originated as "hereditary titles." An English peer would have to renounce his title to be naturalized, but if he went in the peerage by his family surname, he would not have to adopt another. To renounce the "title," or the "order," it can scarcely be necessary always to renounce the name which went with it. Be that as it may, Mumm had no "title" or "order" to renounce, and, as we have said, he was free to keep "von Schwarzenstein" as part of his name, if he had wished.

Those considerations which have at times moved courts to refuse altogether to prohibit all use of a family surname, and to limit relief to circumscribing it, do not extend to adopted names. No one chooses the name which his parents give him; it is imposed upon him willy-nilly; and before he has had any chance to change

it, those associations which identify him have clustered about it. To prevent all use of it is to take away his identity; without it he cannot make known who he is to those who may wish to deal with him; and that is so grievous an injury that courts will avoid imposing it, if they possibly can. But when one abandons his family name, and chooses another for his convenience, it is reasonable to charge him with whatever prejudice to others that may cause; certainly when, as here, he knows what that prejudice will be. England v. New York Pub. Co., 8 Daly, N.Y., 375, is not relevant, for Leslie, the father had actually induced Leslie, the son, to adopt the name; but Pinet v. Maison Pinet, 1898, 1 Ch. 179, decides the point directly. And indeed, it would end all protection to trade names, if all one had to do in order to pirate them, was to change one's own name to that of one's intended victim, or to one near enough to his to be no more than a deceptive variant.

Order affirmed.