**TAYLOR WINE COMPANY, INC., Appellee,**

v.

**BULLY HILL VINEYARDS, INC., Appellant.**

**No. 296, Docket 77–7441.**

United States Court of Appeals, Second Circuit.

Argued Oct. 3, 1977.

Decided Jan. 3, 1978.

---

732

James M. Hartman, Rochester, N.Y. (Harris, Beach, Wilcox, Rubin & Levey, Rochester, N.Y., of counsel), for defendant-appellant.

John Stuart Smith, Rochester, N.Y. (Frank H. Penski and Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., of counsel), for plaintiff-appellee.

Before HAYS, GURFEIN and MESKILL, Circuit Judges.

GURFEIN, Circuit Judge:

 Bully Hill Vineyards, Inc. appeals from a preliminary injunction order issued by the U.S. District Court of the Western District of New York, Burke, J., on August 10, 1977, enjoining it from using and infringing the trademarks owned by the plaintiff, the Taylor Wine Company, Inc., and from engaging in acts of unfair competition. There was no trial below. The injunction was granted on findings of fact and conclusions of law based upon the affidavits submitted.[1]

---

1. The grant or denial of a preliminary injunction is customarily within the discretion of the district court, and the decision will not be disturbed on review unless there has been an abuse of that discretion. *See State of New York v. Nuclear Regulatory Commission,* 550 F.2d 745, 750–51 (2d Cir. 1977); *Triebwasser & Katz v. A.T. & T. Co.,* 535 F.2d 1356, 1358 (2d Cir. 1976); 7 Moore's *Federal Practice* ¶ 65.-04[2], at 65–47 to 65–49, ¶ 65.21 at 85 (Supp.

The broad order enjoined Bully Hill from using the word "Taylor" or any colorable imitation thereof in connection with any labeling, packaging materials, advertising, or promotional materials for any of its products, from infringing plaintiff's trademarks, and from continuing to engage in acts of unfair competition. A panel of this court denied a stay and the matter is here on Bully Hill's appeal. 28 U.S.C. § 1292(a).

The plaintiff, Taylor Wine Company, Inc., has marketed wine from the Finger Lakes region of New York under the Taylor name since 1880, and since 1927 has registered thirteen Taylor trademarks in the U.S. Patent Office, and used them in commerce. It has spent almost ten million dollars in advertising its wine products under the Taylor name in the last ten years. The District Court found that the Taylor trademarks have come to be accepted by the consuming public as identifying the distinctive product of the Taylor Wine Company.

Walter S. Taylor owns the defendant company, Bully Hill Vineyards, Inc. He is the grandson of Walter Taylor who, in 1878, started a winery on Bully Hill. The defendant company was established in 1970, selling its products under the brand name of Bully Hill. At some time before May, 1977, the defendant began to market a new line of wines under a brand name "Walter S. Taylor."

"Walter S. Taylor" appears in large print on the front, back or both of labels of defendant's wines. The word "Original" is displayed in large print or otherwise given prominence. At various places, the name "Walter S. Taylor" is used with the statement "Owner of the Estate" or "Owner of the Taylor Family Estate." Bully Hill has also stated on labels and in its advertising that it was founded in 1878. In fact, the grandfather of the present Taylor with

some partners, formed a partnership whose assets were later conveyed in the lifetime of Walter S. Taylor's father to the plaintiff company. Whatever trademark use of the name "Taylor" inhered in the partnership was transferred with the wine business to the plaintiff corporation. Bully Hill, the vineyard, itself did not stay in the Taylor family but was sold to strangers. Walter S. Taylor bought it in 1958. Thus, neither the use of "Taylor" as a trademark nor the vineyards at Bully Hill devolved upon Walter S. Taylor, the grandson, by descent.

Appellant contends that its use of "Taylor" as a trademark does not infringe the appellee's trademarks because the appellant's wines are better and are not in actual competition with appellee's wines. It also urges us to say that the injunction is too broad, in any case, and that it would be enough if we made Bully Hill add some distinguishing words if it chooses to use Walter S. Taylor's own surname as a trademark.

■ This is not a case where a first comer seeks to save himself a place in a new market he has not yet entered by denying to a man the use of his own name in exploiting that market. *Cf. S.C. Johnson & Son, Inc. v. Johnson*, 116 F.2d 427 (2d Cir. 1940). The wines of defendant and plaintiff compete in the same general market. It is a truism that every product has its own separate threshold for confusion of origin. Wine is a product whose quality is accepted by many simply on faith in the maker. They can perhaps identify the vintner better than the wine.

It is doubtless true that some wartime soldiers did bring back from Europe an inchoate taste for wine and for some of its nuances, and that other Americans have

1976–77). This, of course, does not mean that we must inevitably affirm the district court's decision. *See Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1197 (2d Cir. 1971) (Friendly, J.) (. . . Congress would scarcely have made orders granting or refusing temporary injunctions an exception to the general requirement of finality as a condition to appealability . . . if it intended appellate

courts to be mere rubber-stamps save for the rare cases when a district judge has misunderstood the law or transcended the bounds of reason). *Carroll v. American Federation of Musicians*, 295 F.2d 484, 488–89 (2d Cir. 1961). In trademark cases, a preliminary injunction will lie where there is a likelihood of confusion by shoppers, *Hills Bros. Coffee, Inc. v. Hills, Supermarkets, Inc.*, 428 F.2d 379 (2d Cir. 1970).

acquired a similar taste. Yet, the average American who drinks wine on occasion can hardly pass for a connoisseur of wines. He remains an easy mark for an infringer. Whether appellant's or appellee's wines are better is not the issue. Trespass upon the secondary meaning of the Taylor brand name, developed at great cost over the years, cannot be forgiven on the ground that subtlety of taste will avoid the confusion inherent in the overlapping labels and representations of origin.

We do not doubt that Walter S. Taylor, a former employee of the plaintiff, knew well the customer appeal of the Taylor name, nor that he chose to capitalize on the name as if his grandfather had left it to him as an inheritance. The only serious question we must meet is whether the injunction is too broad.

The conflict between a first comer who has given a secondary meaning (as well as trademark registration) to a family name, and a later comer who wishes to use his own true family name as a trademark in the same industry has been one of the more interesting issues in the law of trademark infringement. The problem is made more difficult when the second comer has his own background of experience in the particular industry, and is not simply a newcomer. See John T. Lloyd Laboratories, Inc. v. Lloyd Brothers Pharmacists, Inc., 131 F.2d 703 (6th Cir. 1942).

In the nineteenth and earlier twentieth centuries, both the state and federal courts tended to be highly solicitous of an individual's personal right to use his name in trade. Brown Chemical Co. v. Meyer, 139 U.S. 540, 11 S.Ct. 625, 35 L.Ed. 247 (1891); Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U.S. 118, 25 S.Ct. 609, 49 L.Ed. 972 (1905); Meneely v. Meneely, 62 N.Y. 427 (1875). See McCarthy, Trademarks in Unfair Competition, § 13.3 pp. 459–560 (1973 ed.).

With the passage of the Federal Trade-Mark Act of 1905, 33 Stat. 724, and an increasing commercial reliance on marketing techniques to create name recognition and goodwill, the courts adopted a more flexible approach to the conflicting property interests involved in surname trademark infringement cases. By 1908, the Supreme Court was willing to enjoin the use of a surname unless accompanied by a disclaimer. Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U.S. 554, 559–60, 28 S.Ct. 350, 52 L.Ed. 616 (1908). Shortly thereafter, in Thaddeus Davids Co. v. Davids, 233 U.S. 461, 34 S.Ct. 648, 58 L.Ed. 1046 (1914) and L. E. Waterman Co. v. Modern Pen Co., 235 U.S. 88, 35 S.Ct. 91, 59 L.Ed. 142 (1914), the Supreme Court established what has since become a guiding principle in trademark surname cases. Once an individual's name has acquired a secondary meaning in the marketplace, a later competitor who seeks to use the same or similar name must take "reasonable precautions to prevent the mistake." L. E. Waterman Co., supra, at 94, 35 S.Ct. at 92.

It is, however, difficult to distill general principles as to what are "reasonable precautions" from the Supreme Court's decisions in Thaddeus Davids and Waterman. In Davids, supra, the Court affirmed without modification a lower court decree enjoining entirely the use of the words "Davids" or "Davids Mfg. Co." in connection with the manufacturing and sale of inks. 233 U.S. at 472, 34 S.Ct. 648. In Waterman, supra, on the other hand, the Supreme Court affirmed without modification a lower court's injunction which simply prescribed the use of a full first name instead of an initial, and required a notice of disclaimer.[2]

Since the field is one that does not lend itself to strict application of the rule of stare decisis because the fact patterns are

---

**2.** Courts have framed relief differently even when the threat of confusion has been much the same. In Hat Corporation of America v. D. L. Davis Corp., 4 F.Supp. 613 (D.Conn.1933), the court granted an absolute injunction restraining the use of the name "Dobbs" on hats.

Yet in Stetson v. Stetson, 85 F.2d 586 (2d Cir.), cert. denied, 299 U.S. 605, 57 S.Ct. 232, 81 L.Ed. 446 (1936), the district court determined, and the court of appeals affirmed that a "Notice of Disclaimer" would suffice to dissipate public confusion.

so varied, we must try to identify the elements that have influenced decisions on the adequacy of the remedy.

For example, the fact that an alleged infringer has previously sold his business with its goodwill to the plaintiff makes a sweeping injunction more tolerable. *Cf. Hat Corporation of America v. D. L. Davis Corp., supra,* note 2; and *cf. Guth v. Guth Chocolate Co.,* 224 F. 932 (4th Cir.), *cert. denied,* 239 U.S. 640, 36 S.Ct. 161, 60 L.Ed. 481 (1915). So, too, if an individual enters a particular line of trade for no apparent reason other than to use a conveniently confusing surname to his advantage, the injunction is likely to be unlimited. *See Vick Medicine Co. v. Vick Chemical Co.,* 11 F.2d 33 (5th Cir. 1926).[3]

If, however, the second comer owns the company himself and evinces a genuine interest in establishing an enterprise in which his own skill or knowledge can be made known to the public, that argues in favor of allowing him to use his own name in some restricted fashion. *Cf. Stetson v. Stetson, supra,* note 2, and cases cited *infra* at 736. As this court said in *Societé Vinicole de Champagne de Mumm,* 143 F.2d 240, 241 (2d Cir. 1944), to prohibit an individual from using his true family surname is to "take away his identity: without it he cannot make known who he is to those who may wish to deal with him; and that is so grievous an injury that courts will avoid imposing it, if they possibly can."[4]

When confusion is likely, however, there must obviously be some limitation on an individual's unrestricted use of his own name. Thus, a second comer may not use any name, mark or advertisement indicating that he is the successor of another corporation or that his goods are the products of that corporation. *Donnell v. Herring-Hall-Marvin Safe Co.,* 208 U.S. 267, 28 S.Ct. 288, 52 L.Ed. 481 (1908). Yet, he may re-

tain a limited use of the family name even though goodwill has been conveyed to the plaintiff. *Herring-Hall-Marvin Safe Co. v. Hall's Safe Co.,* 208 U.S. 554, 558, 28 S.Ct. 350, 52 L.Ed. 616 (1908). As Justice Holmes commented in *Herring-Hall:*

> "The name of a person or a town may have become so associated with a particular product that the mere attaching of that name to a similar product, without more, would have all the effect of a falsehood. . . . An absolute prohibition against using the name would carry trade-marks too far. Therefore the rights of the two parties have been reconciled by allowing the use, provided that an explanation is attached. . . . Of course, the explanation must accompany the use, so as to give the antidote with the bane," 208 U.S. at 559, 28 S.Ct. at 352. [citations omitted].

The injunction issued in *Herring-Hall* prohibited use of the name Hall unless it was stated that the defendant was not the original Hall's Safe and Lock Company or its successor, and that defendant's products were not those of that company. Significantly, the Court not only permitted the defendants to use the Hall name with such a distinguishing explanation, but also to "show that they are sons of the first Hall and brought up in their business by him, and otherwise state the facts." 208 U.S. at 560, 28 S.Ct. at 352.

Speaking generally, when the defendant demonstrates a genuine desire to build a business under his own name, courts have been reluctant to proscribe all surname use whatever even though the defendant's conduct has been less than exemplary. In *L.E. Waterman Co. v. Modern Pen Co., supra,* the Court declined to order an absolute prohibition although it was clear that the defendant *intended* to use his surname to garner benefits from the plaintiff's success-

---

**3.** *See also R. W. Rogers Co. v. Wm. Rogers Mfg. Co.,* 70 F. 1017 (2d Cir. 1895); *Max Factor & Co. v. Factor,* 226 F.Supp. 120, 121–22, 125 (S.D.Cal.1963); *Champion Spark Plug Co. v. Champion,* 23 F.Supp. 638, 640–41 (E.D.Mich. 1938); and cases cited in Pike, *Personal Names*

as Trade Symbols, 3 Mo.L.Rev. 93, 113–14 (1938).

**4.** For a general discussion of the business functions of a personal name, *see* 3 Callmann, *Unfair Competition, Trademarks, and Monopolies,* § 83.3(a)(1) pp. 90–92 (3d Ed. 1969).

ful exploitation of the same name. 235 U.S. at 94–96, 35 S.Ct. 91. Particularly when the infringer is a son or grandson, as in *Hall, supra; National Distillers Products Corp. v. K. Taylor Distilling Co.,* 31 F.Supp. 611, 615 (E.D.Ky.1940), and *Friend v. H. A. Friend & Co.,* 416 F.2d 526, 534 (9th Cir. 1969) *cert. denied,* 397 U.S. 914, 90 S.Ct. 916, 25 L.Ed.2d 94 (1970), the courts have given qualified relief which reflects "a judicious balancing of the countervailing interests of protecting an individual's use of his own name and the avoiding of confusion." 416 F.2d at 534.[5]

Lest it be thought that the equitable doctrine stated by Justice Holmes has lapsed with the passage of time, we mention two more cases which have, in recent years, also balanced the issue much as the Ninth Circuit did in *Friend, supra.* In *Berghoff Restaurant Co., Inc. v. Louis W. Berghoff, Inc.,* 357 F.Supp. 127 (N.D.Ill.1973), *aff'd,* 499 F.2d 1183 (7th Cir. 1974), the defendant was permitted to use his own name when accompanied by appropriate disclaimer, as was the defendant brother in *David B. Findlay, Inc. v. Findlay,* 18 N.Y.2d 12, 21–22, 271 N.Y.S.2d 652, 218 N.E.2d 531, *cert. denied,* 385 U.S. 930, 87 S.Ct. 289, 17 L.Ed.2d 212 (1966).[6]

We do not doubt the necessity for an injunction in this case, but we think that its provisions were too broad. Walter S. Taylor is apparently a scholar of enology and a commentator on wines. He runs a wine museum in the Finger Lakes District, and seems to be a person sincerely concerned with the art of wine-growing. Yet, in granting him the right to let people know that he is personally a grower and distributor of regional wines, the public must be assured that he does not by his "estate bottled" nomenclature and his claims to being the "original" Taylor, confuse the public into believing that his product originates from the Taylor Wine Company which is so well-known.

We have concluded that neither Bully Hill nor Walter S. Taylor should use the "Taylor" name as a trademark, but that the defendant may show Walter's personal connection with Bully Hill. He may use his signature on a Bully Hill label or advertisement if he chooses, but only with appropriate disclaimer that he is not connected with, or a successor to, the Taylor Wine Company. He must also be restrained from using such words as "Original" or "Owner of the Taylor Family Estate." He must, in short, not pretend that his grandfather or his father passed anything on to him as a vintner. To the extent that Walter S. Taylor can exploit his *own* knowledge and techniques as a person, he may do so with the limitations noted, if he refrains from trading on the goodwill of the plaintiff company by competing unfairly.

Since these matters will require careful delineation, we remand to the District Court with a suggestion that it request the submission of appropriate proposed orders from the parties and that it enter an order in the light of this opinion in language adequate to make possible a contempt proceeding if its decree is violated.

The order is affirmed in part, modified in part, and remanded for further proceedings in accordance with this opinion.

---

**5.** In *National Distillers Products Corp. v. K. Taylor Distilling, supra,* the court restrained the defendant from using "Taylor" in its corporate name or in any of its whiskey labels or advertising matter, unless accompanied by a statement plainly and specifically stating that the defendant is "neither the successor to nor connected with the maker of 'Old Taylor' whiskey" and that its product is "not the product of E. H. Taylor, Jr. & Sons, or its successors." 31 F.Supp. at 616. In *Friend v. H. A. Friend, supra,* the defendant was enjoined from using the word "Friend" as a trademark except where preceded by his given name in letters of equal size and coupled with a parenthetical phrase "Not affiliated with H. A. Friend & Co. of Zion, Illinois." 416 F.2d at 534.

**6.** Though the scope of the injunction prohibiting any infringement of trademark rights was not raised on appeal in *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf v. Steinway & Sons,* 523 F.2d 1331 (2d Cir. 1975), we note that the district court there found that "the ancestral Grotrians candidly *adopted* the name Steinweg for the sole purpose of exploiting the Steinweg name in exporting pianos to English-speaking countries." 365 F.Supp. 707 at 714 (emphasis added).