**PAUL FRANK INDUSTRIES, INC., Plaintiff,**

v.

**Paul SUNICH, Paul Frank Design, Chaser Merchandising, and Does 1–10, inclusive, Defendants.**

**No. SACV 07–0609 CJC (ANx).**

United States District Court, C.D. California, Southern Division.

Aug. 21, 2007.

Ann R. Loeb, Jonathan E. Stern & Stanton L. Stein, Dreier, Stein and Kahan, Santa Monica, CA, for Plaintiff.

Howard E. King and Seth A. Miller, King, Holmes, Paterno and Berliner, Los Angeles, CA, for Defendants.

## ORDER GRANTING IN PART PAUL FRANK INDUSTRIES, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

CARNEY, District Judge.

### I. INTRODUCTION

Paul Frank Industries, Inc. ("PFI") brings this trademark infringement action against its former namesake designer, Paul Frank Sunich, and his co-defendants, Paul Frank Design, Chaser Merchandising, and Does 1–10 (collectively, "Defendants"). PFI contends that Defendants' websites (www.paulfranksunich.com, www.chasermerch.com, and www.treestitchdesign.com) and Defendants' sale of T-shirts using Mr. Sunich's full name, "Paul Frank Sunich," infringe PFI's proprietary rights in the *Paul Frank* mark. In this motion, PFI seeks to preliminarily enjoin Defendants from use of the name "Paul Frank" in any commercial context, whether used on its own or in conjunction with other names or words (i.e. Paul Frank Sunich or Paul Frank Design). Mr, Sunich, on the other hand, argues that he has an absolute right to use his full name in any context, including the sale of T-shirts designed by him. The Court finds that neither party's position is supported in the law relating to the use of personal names as trademarks.

Under trademark law, there is no absolute right to use one's own personal name where that use would be confusingly similar to an established use of a famous mark that the public has come to associate with another source. Through the extensive

efforts of both PFI and Mr. Sunich, the *Paul Frank* mark has become famous. Mr. Sunich, therefore, has no absolute right to make use of his name in a manner that would be confusingly similar to PFI's use of the *Paul Frank* mark. Accordingly, Mr. Sunich, along with the other Defendants, must be enjoined from using his full name in the sale of Defendants' T-shirts. Mr. Sunich, however, is entitled under trademark law to use his name in other contexts, commercial or otherwise, to identify himself and inform others about his work. PFI has no right to prevent Mr. Sunich and the other Defendants from using Mr. Sunich's full name in contexts where such use will not result in any confusion with PFI's use of the *Paul Frank* mark.

## II. FACTUAL BACKGROUND

In 1995, PFI was co-founded by Paul Frank Sunich and his friend, Ryan Heuser. Opp'n of Defs. Paul Frank Sunich and Binder Salem Co., Inc. d/b/a Chaser Merchandising to Pl.'s Mot. for a Prelim. Inj. ("Opposition") at 2. Mr. Sunich and Mr. Heuser later teamed up with John Oswald, and in 1997, PFI was incorporated. *Id.* at 3. Since that time, PFI has used the name "Paul Frank" as well as the characters and designs created by Mr. Sunich to achieve enormous success and public recognition in connection with a wide variety of products, including apparel, wallets, purses and other accessories. *Id.*; Pl.'s Mot, for a Prelim. Inj. ("PI Motion") at 3. In fact, PFI's goods now sell at nearly two-thousand retail stores worldwide. Req. for Judicial Notice in Supp. of Mot. of Defs. to Dismiss Compl., Ex. A at 4, In addition, PFI operates its own retail stores in cities around the world and has co-branded deals with famous companies including Sanrio (the creator of Hello Kit-

ty), Oscar Mayer, Barbie, the Elvis Presley estate, and John Deere. Decl. of Seth Miller in Supp. of Defs.' Opp. to T.R.O. and Order to Show Cause re Prelim. Inj. at Ex. D, *Paul Frank Indus., Inc. v. Paul Frank Sunich,* No. 06–296.[1] In 2005, PFI sold over $40 million in goods bearing the *Paul Frank* mark. Compl. at ¶ 20; Answer of Def. Paul Frank Sunich to First Am. Compl. at ¶ 11, *Paul Frank Indus., Inc. v. Paul Frank Sunich,* No. 06–296. To protect its rights in the "Paul Frank" name, PFI has therefore registered various trademarks that incorporate the name into phrases or small designs. PI Motion, Ex. A.

In November 2005, Mr. Sunich had a falling out with PFI that resulted in him leaving the company. Opposition at 3. Since then, the parties have been before this Court in three separate actions, including this one. Mr. Sunich filed the first action (*Paul Frank Sunich v. Paul Frank Indus., Inc.,* No. 06–278 ("*Paul Frank I*")) alleging that PFI was infringing Mr. Sunich's copyright in Julius the Monkey, a signature *Paul Frank* character designed and created by Mr. Sunich. However, after discovering that he had apparently transferred the copyright in Julius to PFI, Mr. Sunich voluntarily dismissed the case.

The second action (*Paul Frank Indus., Inc. v. Paul Frank Sunich,* No. 06–296 ("*Paul Frank II*")) was filed by PFI. In that case, PFI sought to enjoin Mr. Sunich from operating a website under the name "Paul Frank Design" and from meeting with Target and other potential employers to discuss PFI's copyrighted designs. While *Paul Frank II* was also voluntarily dismissed, it was dismissed without prejudice to give PFI time to find additional evidence in support of its claims. The dismissal also came after the Court had

---

**1.** Under Federal Rule of Evidence 201(c), the Court in its discretion takes judicial notice of

the admissions filed in the previous cases litigated between PFI and Mr. Sunich.

issued a temporary restraining order pursuant to which Mr. Sunich took down a "Paul Frank Design" website that had not yet engaged in any commercial activity.

Since *Paul Frank II*, Mr. Sunich and the other Defendants, have made efforts to start up a business selling T-shirts featuring designs by Mr. Sunich. These T-shirts are being sold under the label name, "Treestitch by paul frank sunich" and can be purchased on Defendants' website, www.chasermerch.com. PI Motion at 8. This site allows consumers to choose from a list of product categories that includes products sold under the name, "TREES-TITCH by PAUL FRANK SUNICH." PI Motion, Ex. L. When consumers click on this name, they can see and purchase a variety of brightly colored T-shirts with "whimsical designs" and characters created by Mr. Sunich, many of which, not surprisingly, resemble the designs and characters Mr. Sunich created while at PFI.

Defendants also operate a website, *www.paulfranksunich.com* which links directly to the Chaser Merchandising site, and a site, *www.treestitchdesign.com* which for now, appears to operate solely for informational and/or marketing purposes. The *www.paulfranksunich.com* site opens with a cartoon image of Mr. Sunich addressing viewers saying:

> "Hi Friends, Paul Frank here ... as you may know, I left my old company Paul Frank Industries in November of '05. Inside this site is some of the cool stuff I have been working on since then. Please look for my new stuff by my whole name 'Paul Frank Sunich' and 'By Paul.' Heart, Paul." PI Motion, Ex. C.

Similarly, the *www.treestitchdesign.com* site opens to a Treestitch design logo which leads the viewer to a brief letter from Mr. Sunich that reads:

> "Hello Friends! I've missed y'all! Thank you for coming to Treestitch De-sign, my new home. I'm just getting settled in here at 'the Stitch,' but I figured I'd open the door and let you in for a little sneak peek at all the unique stuff going on. Would you please be so kind as to bookmark this site and check back often, as I'm continually updating with lots of fun stuff I know you'll enjoy! Heart, Paul [signed] Paul Frank Sunich." PI Motion, Ex. B.

As of the time of this Order, there are no updates or further links to any commercial site from the Treestitch webpage.

Now that Mr. Sunich has begun to engage in commercial activity, selling products similar to those that PFI sells, PFI has filed this third action against Mr. Sunich and his co-defendants. In this action, PFI alleges that Defendants' websites and products bearing the "Paul Frank" name infringe on PFI's proprietary rights in the *Paul Frank* mark. PI Motion at 2–3. To prevent dilution and damage from the allegedly infringing activity while this action is pending, PFI now moves for a preliminary injunction to enjoin Defendants from all activity involving commercial use of the name "Paul Frank" in any form, whether followed by the surname Sunich, another word, or nothing at all.

## III. ANALYSIS

### A. Personal Names

Courts are generally reluctant to forbid a person from using his or her own name. *Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 725 (9th Cir.1985); *Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731, 735 (*citing Societe Vinicole de Champagne v. Mumm*, 143 F.2d 240, 241 (2d Cir.1944)) ("to prohibit an individual from using his true family surname is to 'take away his identity: without it he cannot make known who he is to those who may wish to deal with him; and that is so grievous an injury that courts will avoid

imposing it, if they can' "). This is particularly so where the individual "has spent his entire mature life working in the relevant business and, as a result, possesses extraordinary experience, skill and a desire to work in his field." *Gucci v. Gucci Shops, Inc.*, 688 F.Supp. 916, 927 (S.D.N.Y. 1988).

■ Additionally, where, as in this case, an individual has not only experience and skill in a field, but also has a well-known reputation, preventing that individual from using his name in any commercial or business context deprives him of the ability to "communicat[e] useful information to the consuming public." *Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 989 (7th Cir. 2004); 2 *McCarthy on Trademarks & Unfair Competition*, § 13:4 (4th ed.2007). Thus, to enjoin a person from use of his or her personal name, a court must find that the name has acquired secondary meaning. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir.1992). That is to say, the name needs to have reached a level of recognition such that the consuming public would associate the name with a particular source. *Id.* This applies to surnames, combinations of first names and surnames, first names alone, as well as combinations of a person's first two names. *See, e.g., Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.)*, 544 F.2d 1167 (2d Cir.1976); *Creager v. Russ Togs, Inc.*, 1982 WL 52209 (C.D.Cal.1982); *John Walker & Sons, Ltd. v. Bethea*, 305 F.Supp. 1302 (D.C.S.C.1969).

■ "Paul Frank" is a personal name that has achieved significant recognition and fame. Thus, while Mr. Paul Frank Sunich seeks to do business using his full name, he is restricted in his right to do so. Mr. Sunich's full name contains within it the famous "Paul Frank" name that PFI has spent significant resources marketing and advertising in association with its products. In fact, Mr. Sunich has played a big part in building the success of the *Paul Frank* mark. Today, however, while the mark and the many famous designs created by Mr. Sunich during his time at PFI are still associated with PFI, Mr. Sunich is not. Mr. Sunich, therefore, cannot continue to use the same marks and designs in contexts where the public has come to associate such use with PFI.[2]

Contrary to Mr. Sunich's argument, he has no absolute right to use his full name. As with other marks, a court can restrict use of a full name if it is likely to cause consumer confusion with an established, famous mark. A number of courts have found that even where there is no intent to capitalize on the trademark of another, "use of an infringing personal name may still be limited by an injunction carefully tailored to balance the interest in using one's name against the interest in avoiding public confusion." *E. & J. Gallo* at 1288. In *Gallo*, plaintiff was the well-known winery that owned trademarks in the Gallo name as well as in the name "Gallo Salame" which was used in the sale of meat and cheese packages. While the district court found that Joseph Gallo had inten-

---

**2.** Mr. Sunich argues that PFI cannot enjoin his use of the "Paul Frank" name because he is the senior user of the name. According to Mr. Sunich, he designed and sold products under the shortened "Paul Frank" name before PFI was ever formed. Since that time, however, Mr. Sunich has acquiesced to PFI's use and ownership of the name, at least in connection with the sale of PFI products. Decl. of John Oswald in Supp. of Pl.'s Ex Parte Appl. for a T.R.O. and Order to Show Cause re Prelim. Inj. at Ex. F. Because the *Paul Frank* name has acquired secondary meaning identifying PFI's products, the law prevents Mr. Sunich from now claiming a proprietary trademark in his name. 2 *McCarthy on Trademarks & Unfair Competition, supra*, § 13:2; *Jako v. Pilling Co.*, 670 F.Supp. 1074 (D.Mass.1987).

tionally capitalized on the Gallo reputation and infringed the Gallo marks, it enjoined him only from using the names "Gallo" or "Joseph Gallo" as trademarks in his retail sale of cheese or in audible advertisements. *Id.* The court did, however, explicitly permit use of the name "Joseph Gallo" as a trademark on wholesale packages of cheese, use of the trade names "Gallo Cattle Co." and "Joseph Gallo Farms," and use in advertising of both the trade names and Joseph Gallo's signature. *Id.* at 1289. The Ninth Circuit affirmed the district court after modifying the injunction to delete references to retail packages of "other products" and to the enjoining of defendants' "descendants." *Id.* at 1298.

Similarly in the *Gucci* case, the famous company, Gucci Shops, sought to enjoin Paolo Gucci, its former chief designer and grandson of its namesake designer, Guccio Gucci, from using his name in connection with the sale of handbags, lamps, sunglasses, and other products designed by him after being discharged from the company. *Gucci v. Gucci Shops, Inc.,* 688 F.Supp. 916. The *Gucci* court thus crafted an injunction framed to "avoid confusion in the marketplace, protect [the] prior company's property interest in its name, and permit [Paolo Gucci] to exploit his own identity and reputation in a legitimate manner." *Id.* at 927 (citation omitted). While the injunction did prohibit Paolo Gucci from using the name Gucci as part of any trademark or trade name, Paolo was allowed to use his name in identifying himself as the designer of those products sold under a separate name. Any such use of his name, however, could not be more prominent than the trademark itself and had to be followed by a disclaimer notifying consumers that Paolo was no longer affiliated with any of the Gucci entities. *Id.* at 928.

While Mr. Sunich does not have an absolute right to use of his personal name,

courts will only enjoin such use "to the extent necessary to avoid public confusion." *E. & J. Gallo* at 1289. In *Madrigal Audio Labs., Inc. v. Cello Ltd.,* 799 F.2d 814, 823 (2d Cir.1986), the court held that even where an individual has sold rights to a name, he can only be precluded from using the name as part of another company name or on other products. He cannot be precluded from taking advantage of his reputation by establishing a competing company, or advertising that he is affiliated with a new company. *Id.* As the *Madrigal* court stated, "even when a personal name has become a trade name it continues to serve the important function to its bearer of acting as a symbol of that individual's personality, reputation and accomplishments as distinguished from that of the business, corporation, or otherwise, with which he is associated." *Id.* at 822.

Mr. Sunich clearly has a strong interest in using his personal name. This interest, however, does not provide for an absolute right. Instead, the Court must fashion a limited injunction balancing Mr. Sunich's interest in use of his name with any countervailing interests in avoiding public confusion and protecting PFI's rights in the *Paul Frank* mark.

## B. Success on the Merits

To obtain a preliminary injunction, a plaintiff must show "either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in his favor." *GoTo.com v. Walt Disney Co.,* 202 F.3d 1199, 1204–05 (9th Cir.2000). Success on the merits for a trademark infringement claim requires a plaintiff to prove: (1) ownership of a valid trademark, and (2) likelihood of confusion. *Brookfield Communications, Inc. v. West Coast Entm't Corp.,* 174 F.3d 1036, 1046

(9th Cir.1999). The primary issue in dispute between the parties is the likelihood of confusion between those marks being used by Defendants and those owned by PFI. In determining likelihood of confusion, the Court applies the eight-factor analysis set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979). The eight factors the Court considers are: (1) strength of the mark; (2) similarity of the marks; (3) proximity of the goods/services sold; (4) similarity in marketing channels used; (5) type of goods/services and degree of care likely to be exercised by the purchaser; (6) evidence of actual confusion; (7) intent of the second user; and (8) likelihood of expansion of product lines and services.

■ Under the first factor, it is generally the case that the stronger a mark, or the more likely the mark is to be remembered and associated in the public mind with the mark's owner, the greater protection that mark is afforded. *Nutri/System, Inc. v. Con–Stan Indus., Inc.*, 809 F.2d 601, 605 (9th Cir.1987); *Brookfield* at 1058. When analyzing the strength of a mark, courts traditionally categorize the mark somewhere along a continuum of distinctiveness that goes from "generic" marks which are afforded no protection, to "descriptive" or "suggestive" marks given moderate protection, to "arbitrary" or "fanciful" marks which are given maximum protection. *Id.* While personal names are not inherently distinctive, they are given protection and treated as strong marks when a party can show that the name has acquired "secondary meaning." *E. & J. Gallo*, 967 F.2d at 1291. Secondary meaning is the association consumers have between a mark and a particular source. *Id.* A finding that a name has secondary meaning and is a strong mark means that the mark is more distinctive, and therefore warrants greater protection, than a descriptive or suggestive mark. *Id.*

The *Paul Frank* mark has acquired secondary meaning and can be classified as a strong mark. The mark has come to be associated in the public mind with the company, PFI, and its products, designs, and characters. Through marketing, promotions, advertising, media attention and other publicity, the *Paul Frank* mark has gained widespread recognition and popularity. PFI sells products with the *Paul Frank* mark at nearly two-thousand retail stores worldwide; it has co-branded deals with various companies including Sanrio, Oscar Mayer, Barbie, the Elvis Presley estate and John Deere; and in 2005, it sold over $40 million in goods bearing the *Paul Frank* mark. In *Paul Frank II*, Mr. Sunich conceded that the public associates PFI's registered trademarks with the company's product. Def.'s Opp'n to T.R.O. at 15. Mr. Sunich also admitted that "PFI has achieved enormous success and public recognition in connection with a wide variety of goods and services." See First Amended Compl. at ¶¶ 9, 11, *Paul Frank Indus., Inc. v. Paul Frank Sunich*, No. 06–296; Answer of Def. Paul Frank Sunich to First Am. Compl. at ¶¶ 9, 11, *Id.* Retailers, other well-known companies, the public, and Mr. Sunich himself all provide ample support for the notion that the *Paul Frank* mark has attained a level of strength and recognition deserving of protection.

Looking to the second *Sleekcraft* factor, the Court finds that Defendants' use of the name "Paul Frank Sunich" is similar to PFI's use of its *Paul Frank* mark. In determining the similarity of marks, courts must consider marks in their entirety as they appear in the marketplace, judging them based on appearance, sound and meaning. *GoTo.com* at 1206. As found on the Chaser Merchandising website and on the T-shirts sold by Defendants through that website, the name "Paul Frank Sunich" appears and sounds similar to the

*Paul Frank* mark as used in association with PFI products. On the T-shirts, the name "paul frank sunich" is even written in the same all lower case lettering characteristically used by PFI in most places where the Paul Frank name appears. PFI also notes that on the Chaser Merchandising website, the name "SUNICH" falls on a separate line from the rest of the label name, leaving one line that reads, "TREESTITCH by PAUL FRANK." There, the name appears not only to be similar to the mark, but identical to it, allowing an even greater chance for consumer confusion.

Under the third *Sleekcraft* factor, proximity of the goods sold, both parties use the "Paul Frank" name in conjunction with the sale of brightly colored T-shirts that are designed with stylized cartoon animals printed on them. Goods or services are related when the consuming public would "reasonably think that the goods or services came from the same source if sold under the same mark." *Sleekcraft* at 348 n. 10. Defendants' T-shirts bear an uncanny resemblance to those sold by PFI, such that if both were sold under the same mark, it would be entirely reasonable for the consuming public to think that the shirts came from the same source. In fact, Mr. Sunich has previously recognized the possibility of consumer confusion were he to design products related to apparel, accessories or fashion. Specifically, Mr. Sunich represented to the Court that a T.R.O. in a prior case was unnecessary and that:

> "even were he to design products in the future using his Paul Frank Design website, if those products [were] completely unrelated to Plaintiff's goods and services, *i.e.*, something wholly unrelated to apparel, accessories, or fashion, then there would be no possibility of consumer confusion ... Plaintiff [PFI] only owns marks with respect to the product lines in which it sells goods and services.

> Defendant [Mr. Sunich] has left the company and may pursue entirely new fields, or none at all." Def.'s Opp'n. to T.R.O, at 13.

Despite this acknowledgment that PFI owns marks with respect to product lines related to apparel, accessories, and fashion, Mr. Sunich is nevertheless designing and selling T-shirts that are related to and strikingly similar to those goods sold by PFI.

Furthermore, Defendants are selling those T-shirts using a similar marketing channel as PFI, the Internet. This fourth *Sleekcraft* factor, therefore, also weighs in favor of enjoining Defendants' allegedly infringing activity. While there is no evidence that the parties' products are being sold through the exact same sites on the Internet, that difference is unlikely to be significant when a potential purchaser is looking online to buy a *Paul Frank* T-shirt.

The fifth *Sleekcraft* factor, type of goods and degree of care likely to be exercised by a purchaser, also adds to any likelihood of confusion. T-shirts are not the type of product that would warrant any particular degree of care on the part of a purchaser. *Id.* at 353. While purchasers of more expensive goods might make a more careful examination of the exact brand and product being sold, the same would not apply here.

For the sixth *Sleekcraft* factor, PFI presents no evidence of actual confusion. Such evidence, however, is not necessary for finding a likelihood of confusion, particularly given the fact that Defendants have only recently begun operating their websites. *E. & J. Gallo* at 1292; *see also Brookfield* at 1060.

Similarly under the seventh *Sleekcraft* factor, there is no clear showing that Defendants intended to infringe PFI's trade-

marks. Intent, however, is also not a requirement for trademark infringement.

Finally, the eighth *Sleekcraft* factor, likelihood of expansion of product lines, favors granting a preliminary injunction. Particularly given the nature of the Internet, Defendants could easily expand into other markets in which PFI competes.

Given that *Paul Frank* is a strong mark that has achieved secondary meaning, that the name "Paul Frank Sunich" as used by Defendants looks and sounds very similar to PFI's use of the *Paul Frank* mark, that Defendants' allegedly infringing T-shirts are similar to PFI's T-shirts, that purchasers are unlikely to be too careful in examining the differences between similar-looking T-shirts, that both parties market and sell their T-shirts over the Internet, and that Defendants could easily expand their business to compete with PFI in more than just the sale of T-shirts, the Court finds that the *Sleekcraft* factors weigh heavily in favor of finding probable success on the merits with regard to whether a consumer is likely to be confused by Defendants' commercial use of the name Paul Frank Sunich in connection with their sale of stylized T-shirts.

### C. Possibility of Irreparable Injury

■ For trademark infringement cases, once a plaintiff shows a likelihood of success on the merits, a district court can presume that continuing infringement would cause the plaintiff irreparable harm. *Brookfield* at 1066. Infringing activity may lead to a loss of control over PFI's reputation and/or dilution of the goodwill that PFI has built up over the years. Such damage is difficult, if not impossible, to measure or undo.

### D. Limited Injunctions for the Use of Personal Names

■ Because this case involves use of Mr. Sunich's personal name, the Court must tailor an appropriate injunction so as to limit use of the Paul Frank name "only to the extent necessary to avoid public confusion." *E. & J. Gallo* at 1289. This has often involved an order allowing for qualified use of a name in conjunction with a disclaimer. *See, e.g., Friend v. H.A. Friend and Co.,* 416 F.2d 526, 534 (9th Cir.1969) (upholding injunction permitting defendant to use his own surname if accompanied by first name and disclaimer of any affiliation with plaintiff); *Taylor,* 569 F.2d 731 (modifying injunction to allow signature of defendant company's owner on labels and advertisements when accompanied by disclaimer of affiliation with the plaintiff company). In this case, it is not practical to put a disclaimer on every single one of Defendants' T-shirts or next to every reference to Defendants' T-shirt label that appears on the Chaser Merchandising website. As to the T-shirts, there is simply not enough space on the labels to include a prominent disclaimer. Moreover, a disclaimer is unlikely to be effective in this situation where the sight and sound of Mr. Sunich's name as used on Defendants' T-shirts is remarkably similar to the PFI mark. *See E. & J. Gallo* at 1292 n. 6. With respect to the Chaser Merchandising website, "Treestitch by Paul Frank Sunich" is listed as one among many different products sold from that site. There is no space next to Mr. Sunich's name where Defendants could therefore include a prominent disclaimer.[3] For these reasons, Defendants must be preliminarily enjoined from commercial use of the name "Paul Frank" in any form as a trademark or

---

**3.** Not surprisingly, Defendants have not raised the option of placing a prominent disclaimer on every T-shirt, on every label, and next to every reference to the label name where the T-shirts are sold.

trade name on their T-shirt labels or as part of or in reference to their T-shirt label name. For instance, use of the trade name "Treestitch by Paul Frank Sunich" is enjoined, both on T-shirt labels and in commercial use as found on the www. chasermerch.com website.

■ Mr. Sunich is permitted to use his full name, Paul Frank Sunich, however, in signatures, business meetings, and other such contexts where use of the name does not resemble a trademark or trade name, and does not appear on goods similar to those sold by PFI. Where Mr. Sunich's full name is used, there must also be some clear understanding or explanation that Mr. Sunich is no longer affiliated with PFI. For example, Defendants' use of the website domain names, *www.paulfrank sunich.com* and *www.treestitchdesign.com*, is not enjoined so long as they maintain their messages explaining that Mr. Sunich does not work for or with PFI. The sites also cannot begin to directly sell or link to any other site that would sell clothing using the *Paul Frank* name in any form on either the product itself or the product's label. Finally, Mr. Sunich may also continue to use his full name, Paul Frank Sunich, in introducing or describing himself, i.e. in Mr. Sunich's opening message to visitors, in biographical excerpts about the designer, in letters, business cards, and the like. Once again, however, while Mr. Sunich is free to let others know that he used to work with and was in fact a founder and designer at PFI, in any business or commercial setting, it must be clear that his affiliation with PFI has since terminated.

### E. Bond

Accounting for possible hardship to the Defendants, the Court orders PFI to post a bond or cash in the amount of $100,000. While the parties have not submitted evidence to support possible damages to Defendants if they are wrongfully enjoined, $100,000 is the base amount that Mr. Sunich was earning before he left PFI. This amount also falls into a reasonable range for bond amounts set in trademark infringement actions involving injunctions on the sale of clothing. *See Bear U.S.A., Inc. v. A.J. Sheepskin & Leather Outerwear, Inc.,* 909 F.Supp. 896, 910 (S.D.N.Y.1995) ($100,000 bond); *Tsunami Softgoods, Inc. v. Tsunami Int'l, Inc.,* 2001 WL 670926 (D.Utah 2001) ($50,000 bond); *Abercrombie & Fitch v. Fashion Shops of Kentucky, Inc.,* 363 F.Supp.2d 952 (S.D.Ohio 2005) ($150,000 bond) [4]

### IV. CONCLUSION

Balancing Mr. Sunich's legitimate interest in using his personal name and reputation in association with products designed by him, together with the interest in avoiding consumer confusion and PFI's ownership interest in both the *Paul Frank* mark and in the goodwill the mark has accumulated, the Court **GRANTS** PFI's motion for a preliminary injunction in limited part. Defendants are enjoined from commercial use of the name, Paul Frank Sunich, insofar as it is used in the sale of Defendants' T-shirts. Other uses of the name, i.e. on business cards or to identify himself as the designer of Defendants' products in a message or informative piece posted on Defendants' websites, are permitted so long as those sites maintain the disclaimer that

4. The Court rejects Plaintiff's suggestion of a $10,000 bond amount as too low, particularly considering that this business is Mr. Sunich's livelihood and would require renaming and repackaging Defendants' product. Defendants' suggestion of $1,000,000, however, is too high and unjustifiable given Defendants failure to provide evidence of any significant sales amounts.